**SESSIONS & KIMBALL LLP**
Larry Herrera, State Bar No. 278315
23456 Madero, Suite 170
Mission Viejo, California 92691
Tel: (949) 380-0900
Fax: (949) 380-8283

Attorneys for Plaintiff
TONY SHERMAN

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| TONY SHERMAN, an individual,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>PEPPERIDGE FARM, INC., a Connecticut Corporation; AND DOES 1-50, inclusive,<br><br>　　　　　Defendants.<br>_____ | Case No: 8:22-CV-01781 JWH (ADSx)<br><br>**SECOND AMENDED COMPLAINT**<br>1) Whistleblower Retaliation (Lab. Code §1102.5);<br>2) Breach of Implied Covenant of Good Faith and Fair Dealing;<br>3) Breach of Contract;<br>4) Retaliation for Engaging in Protected Activity;<br>5) Breach of Contract |

**JURY TRIAL DEMANDED**

Plaintiff TONY SHERMAN hereby complains and alleges as follows:

**PRELIMINARY ALLEGATIONS**

1. The amount in controversy is in excess of the minimum jurisdiction of this court.

2. Plaintiff TONY SHERMAN ("SHERMAN") is an individual residing in the State of California, County of Orange.

3. Defendant Pepperidge Farm, Inc ("PEPPERIDGE") is a Connecticut corporation doing business in California, headquartered at 595 Westport Ave,

Norwalk, CT 06851.

4. The true names and capacities of DEFENDANT DOES 1 through 50 inclusive, whether individual, corporate, associate, or otherwise, are unknown to SHERMAN, who therefore sues such DEFENDANTS by fictitious names pursuant to Code of Civil Procedure § 474. SHERMAN will amend the Complaint to show their true names and capacities once they have been ascertained. DEFENDANTS PEPPERIDGE FARM, Inc., and DOES 1-50 are hereafter collectively referred to as DEFENDANTS.

5. SHERMAN is further informed and believes, and thereon alleges, that each of the fictitiously named DEFENDANT DOES is responsible in some manner for the occurrences herein alleged, and that SHERMAN's injuries and damages as alleged herein were proximately caused by their conduct.

6. SHERMAN is informed and believes, and thereon alleges, that DEFENDANTS and DEFENDANT DOES, and each of them, at all relevant times herein were the agents, employees, servants, joint venturers, alter egos, parents, subsidiaries, management companies, holding companies, directors, fiduciaries, representatives, and/or co-conspirators of each of the remaining DEFENDANTS and DEFENDANT DOES. DEFENDANTS and DEFENDANT DOES, in doing the things hereinafter alleged, were acting within the course and scope of such relationships and are responsible in some manner for the occurrences herein alleged and, as a proximate cause, of SHERMAN's damages as herein alleged.

## FACTUAL BACKGROUND

7. In or about 1991, SHERMAN invested in a standard PEPPERIDGE consignment contract on behalf of his corporation, Fun Stuff Food, Inc. (Hereinafter "Fun Stuff").

8. Sherman was the sole shareholder in Fun Stuff at all times relevant to this complaint, and was the sole shareholder at all times during which Fun Stuff was an active legal entity.

9. Sherman was the sole member of the board of directors for Fun Stuff at all times relevant to this complaint, and was the sole member of the board of directors at all times during which Fun Stuff was an active legal entity.

10. As sole shareholder and sole board member, making a request to the board of directors would be futile as SHERMAN would be making a request of himself.

11. For decades, SHERMAN, through Fun Stuff, provided PEPPERIDGE consigned products directly to accounts within his exclusive sales territory.

12. In or around 2017, SHERMAN was elected President of the Pepperidge Owners Association of America (hereinafter "POAA"), which is the national trade association comprised of Pepperidge Farm distributors.

13. In or around 2019, several individuals from several states including California, Illinois, and Massachusetts sued PEPPERIDGE to address the misclassification of POAA members as independent contractors.

14. SHERMAN and POAA aggressively worked to make POAA members aware of the employment misclassification class action lawsuits against PEPPERIDGE.

15. In or around January 2020, following a proposed consolidated settlement agreement being reached between PEPPERIDGE and the counsel for the class representatives, SHERMAN objected to the proposed consolidated class settlement.

16. SHERMAN objected to the settlement agreement and continued to inform current and former class members that the settlement agreement drafted by PEPPERIDGE contained substantially more than a specific release of wage-related claims, because the proposed settlement would also result in the material alterations of existing contract rights. PEPPERIDGE had forced these terms into a proposed settlement agreement, despite these terms having not been discussed or negotiated.

17. In or around June 2021, SHERMAN objected to an updated settlement agreement once again. The updated settlement agreement would again force changes to existing contracts between PEPPERIDGE and POAA members in a way that was adverse to POAA members.

18. SHERMAN was the most vocal voice amongst distributors in objecting to the settlement agreement and encouraging class members to seek independent counsel to review the settlement agreement and object to it as well.

19. As a result, PEPPERIDGE began to retaliate against SHERMAN for his objection.

20. On or around June 3, 2021, after SHERMAN's objection to the settlement agreement, PEPPERIDGE notified SHERMAN of alleged misconduct that he engaged in at Target store 2304 in May of 2021 before his objection.

21. On or around June 14, 2021, SHERMAN provided PEPPERIDGE a response, denying any wrongdoing.

22. In addition, SHERMAN notified PEPPERIDGE that he had already taken remedial measures by having one of his employees make all deliveries to this Target so SHERMAN would never have to enter that store again.

23. On or around July 7, 2021, PEPPERIDGE demanded SHERMAN to describe once again his role in the alleged wrongdoing at Target 2304.

24. Once again SHERMAN denied any wrongdoing and informed PEPPERIDGE once again that he had took remedial measures so SHERMAN would never have to enter that Target again.

25. On or around July 21, 2021, PEPPERIDGE terminated SHERMAN's contract (through Fun Stuff Foods, Inc.) less than a week before the Final Approval Hearing for the proposed consolidated class settlement.

26. PEPPERIDGE seemed to have no issue with SHERMAN's interaction with the Target employees until after SHERMAN's final objection to the settlement.

27. PEPPERIDGE retaliated against SHERMAN by terminating his employment because of SHERMAN's role as POAA President and leading objector to the proposed settlement.

28. At all times relevant hereto, SHERMAN was misclassified as an independent contractor of PEPPERIDGE when he should have been classified as an employee.

29. After terminating SHERMAN, PEPPERIDGE exercised its right to sell SHERMAN's business, Fun Stuff Foods, Inc.

30. Pursuant to the contract that SHERMAN had with PEPPERIDGE, PEPPERIDGE was to give SHERMAN a specific value for the sale of Fun Stuff Foods, Inc. This value was to be calculated based on Fun Stuff Inc. sales over a specific period of time, and a specific multiplier.

31. PEPPERIDGE did not apply this formula properly, and accordingly provided SHERMAN with substantially less than the contractual amount that PEPPERIDGE was supposed to give SHERMAN for the sale of Fun Stuff Foods, Inc.

32. During the time that SHERMAN provided services for PEPPERIDGE, PEPPERIDGE controlled the manner in which SHERMAN was to conduct the services PEPPERIDGE required him to perform.

33. The services that SHERMAN provided for PEPPERIDGE were within the usual course of PEPPERIDGE's business, which was to sell food.

34. People who deliver baked goods to retailers as SHERMAN did, are typically employees of manufacturers like PEPPERIDGE.

35. SHERMAN held himself out as a representative of PEPPERIDGE.

//
//
//
//

# FIRST CAUSE OF ACTION
## Whistleblower Retaliation
### (Violations of Lab. Code §1102.5)
### [Against All Defendants]

36. SHERMAN realleges and hereby incorporates by reference the allegations of paragraphs 1 through 28, inclusive, with the same force and effect as if said paragraphs were fully set forth herein.

37. At all times material hereto, SHERMAN was an employee protected by Labor Code § 1102.5(b), which prohibits whistleblower retaliation.

38. At all times material hereto, PEPPERIDGE and DEFENDANT DOES were employers within the meaning of California Labor Code §1132.2., and as such were prohibited from engaging in whistleblower retaliation.

39. Sherman complained about PF engaging in conduct that was a breach of contract, and breaching a contract is a violation of California common law as well as Federal law.

40. SHERMAN also had reasonable cause to believe that the information he disclosed evidenced a violation of applicable laws and PEPPERIDGE's policies.

41. Employees with PEPPERIDGE who had authority over SHERMAN and could investigate his complaints, knew that SHERMAN made complaints that PEPPERIDGE was attempting to breach existing contracts by forcing terms into the aforementioned settlement agreement that breached the existing contracts.

42. PEPPERIDGE and DEFENDANT DOES retaliated against SHERMAN by terminating his employment after his objection to the proposed settlement agreement.

43. After nearly 30 years working with PEPPERIDGE, Sherman's contract with PEPPERIDGE was terminated just weeks after SHERMAN's most

recent complaints of the illegal conduct above.

44. PEPPERIDGE's stated non-discriminatory reason for terminating SHERMAN is pre-text to cover up PEPPERIDGE's retaliatory motive.

45. SHERMAN'S complaints of illegal conduct by PF was a substantial contributing factor in PEPPERIDGE's, and DEFENDANT DOES decision to subject SHERMAN to the adverse employment actions.

46. As a direct, foreseeable and proximate result of PEPPERIDGE's and DEFENDANT DOES and each of their behaviors, SHERMAN has suffered, and continues to suffer, substantial losses in past and future earnings, bonuses, deferred compensation and other employment benefits, all to SHERMAN's damage in an amount according to proof at trial.

47. As a further direct, foreseeable and proximate result of PEPPERIDGE's and DEFENDANT DOES and each of their behaviors, SHERMAN has suffered and incurred, and is presently suffering and incurring, serious harm and damage to SHERMAN's personal and professional reputation and credibility all the SHERMAN's damage in an amount according to proof at trial.

48. As a result of further direct, foreseeable and proximate result of PEPPERIDGE's and DEFENDANT DOES and each of their behaviors, SHERMAN has suffered, and continues to suffer, severe and lasting embarrassment, humiliation, mental anguish and emotional distress, and incidental and consequential damages and expenses, all to SHERMAN's damage in an amount according to proof at trial.

49. SHERMAN is informed and believes, and thereon alleges, that PEPPERIDGE's and DEFENDANT DOES committed the acts described herein deliberately, callously, maliciously, fraudulently and in an oppressive manner intended to injure SHERMAN and that such improper motives amounted to malice and a conscious disregard of SHERMAN's rights as set forth herein. In doing the

acts as herein alleged, the manager was acting pursuant to the authorization of PEPPERIDGE and DEFENDANT DOES. An award of punitive damages against PEPPERIDGE's and DEFENDANT DOES is therefore warranted.

50. As a result of the retaliatory conduct of PEPPERIDGE's and DEFENDANT DOES and each of them, as alleged herein, SHERMAN is entitled to costs of suit, including reasonable attorney's fees, pursuant to Labor Code § 1021.5, in according to proof at trial.

### SECOND CAUSE OF ACTION
### Breach of Implied Covenant of Good Faith and Fair Dealing
### [Against All Defendants]

51. SHERMAN repeats and realleges each and every allegation contained in paragraphs 1 through 40, inclusive, and incorporates the same by reference as if fully set forth herein.

52. At all times material herein, SHERMAN was employed by PEPPERIDGE and DEFENDANT DOES.

53. SHERMAN entered into a contract with PEPPERIDGE that listed 15 categories which PEPPERIDGE can rely on as a lawful basis for terminating the contract between SHERMAN and PEPPERIDGE.

54. SHERMAN satisfied all his responsibilities under his contract. However, PEPPERIDGE and DEFENDANT DOES retaliated against SHERMAN for his complaints about being misclassified, and because SHERMAN pointed out that the proposed settlement agreement contained a number of terms that PEPPERIDGE and DEFENDANT DOES tried to force into the agreement that would have breached contracts that POAA members had with PEPPERIDGE and caused them lose their protections.

55. PEPPERIDGE's reason which they are relying upon as a justification for terminating SHERMAN does not rise to the level mentioned in any of the 15 categories listed in the contract.

56. PEPPERIDGE and DEFENDANT DOES interpreted the terms of the contract in bad-faith, in order to terminate SHERMAN despite SHERMAN having not engaged in any conduct that would give PEPPERIDGE the right to terminate SHERMAN.

57. PEPPERIDGE's and DEFENDANT DOES actions were a substantial factor in causing SHERMAN's harm.

58. As a direct, foreseeable and proximate result of PEPPERIDGE's and DEFENDANT DOES behavior, SHERMAN has suffered, and continues to suffer, substantial losses in past income, bonuses, deferred compensation, and other employment benefits, all to SHERMAN's damage in an amount according to proof at trial.

59. SHERMAN is informed and believes, and thereon alleges, that PEPPERIDGE's and DEFENDANT DOES committed the acts described herein deliberately, callously, maliciously, fraudulently and in an oppressive manner intended to injure SHERMAN and that such improper motives amounted to malice and a conscious disregard of SHERMAN's rights. An award of punitive damages against PEPPERIDGE and DEFENDANT DOES is therefore warranted.

### THIRD CAUSE OF ACTION
**Breach of Contract**
**[Against All Defendants]**

60. SHERMAN repeats and realleges each and every allegation contained in paragraphs 1 through 49, inclusive, and incorporates the same by reference as if fully set forth herein.

61. SHERMAN entered into a contract with PEPPERIDGE and DEFENDANT DOES that listed 15 categories which PEPPERIDGE can rely on as a lawful basis for terminating the contract between SHERMAN and PEPPERIDGE.

62. PEPPERIDGE's reason which they are relying upon as a justification

for terminating SHERMAN does not rise to the level mentioned in any of the 15 categories listed in the contract.

63. PEPPERIDGE terminated SHERMAN in breach of the contract SHERMAN had with PEPPERIDGE.

64. PEPPERIDGE's and DEFENDANT DOES breach of contract was a substantial factor in causing SHERMAN's harm.

65. As a direct, foreseeable and proximate result of PEPPERIDGE's and DEFENDANT DOES, and each of their behaviors, SHERMAN has suffered damages.

66. SHERMAN further requests reasonable attorney fees pursuant to the terms of the contract.

## FOURTH CAUSE OF ACTION
**Retaliation for Engaging in Protected Activity
(Violation of Lab. Code §98.6)
[Against all DEFENDANTS]**

67. SHERMAN repeats and realleges each and every allegation contained in paragraphs 1 through 56, inclusive, and incorporates the same by reference as if fully set forth herein.

68. At all times relevant to this Complaint, SHERMAN was employed by PEPPERIDGE's, and DEFENDANT DOES and covered by California Labor Code section 98.6 anti-retaliation provisions, which prohibit an employer from retaliating against employees who report what they reasonably believe to be unlawful business practices.

69. Specifically. California Labor Code section 98.6 provides that:
(a) A person shall not discharge an employee or in any manner discriminate, retaliate, or take any adverse action against any employee … because the employee …engaged in any conduct delineated in this … or because the employee … has … made a written or oral complaint that he or she is owed unpaid wages, or …

because of the exercise by the employee … on behalf of himself, herself, or others of any rights afforded him or her.

(b)(3) In addition to other remedies available, an employer who violates this section is liable for a civil penalty not exceeding ten thousand dollars ($10,000) per employee for each violation of this section, to be awarded to the employee or employees who suffered the violation.

70. As alleged above, SHERMAN engaged in acts protected by this public policy including, but not limited to, complaining about being misclassified as an independent contractor, objecting to the proposed settlement agreement, encouraging fellow POAA members to opt out and/or seek legal counsel to review the settlement agreement and assert their rights, and complaining that PEPPERIDGE was attempting to breach its contract with its distributors.

71. After nearly 30 years working with PEPPERIDGE, Sherman's contract with PEPPERIDGE was terminated just weeks after SHERMAN's most recent speech protected by Lab. Code §98.6.

72. PEPPERIDGE's stated non-discriminatory reason for terminating SHERMAN is pre-text to cover up PEPPERIDGE's retaliatory motive.

73. SHERMAN's protected conduct described above was a substantial motivating factor in PEPPERIDGE and DEFENDANT DOES' decision to terminate SHERMAN.

74. SHERMAN is informed and believes and thereon alleges that PEPPERIDGE and DEFENDANT DOES knew or should have known that their retaliatory conduct was unlawful. SHERMAN is further informed and believes and thereon alleges that PEPPERIDGE's and DEFENDANT DOES conduct outlined above was intentional and deliberately retaliatory and was engaged in out of animus for SHERMAN and for the purpose of injuring SHERMAN because of his protected activity.

75. PEPPERIDGE's and DEFENDANT DOES conduct was a substantial

factor in causing SHERMAN's harm, namely that SHERMAN was forced to suffer, among other injuries, lost wages and other compensation, benefits, physical and emotional distress including nervousness, humiliation, depression, anguish, embarrassment, fright, shock, pain, discomfort and anxiety, and other pecuniary loss, thus causing SHERMAN damages in an amount according to proof at trial, in excess of the minimum for unlimited jurisdiction of this Court.

76. Pursuant to California Labor Code section 1021.5, SHERMAN is entitled to reasonable attorney's fees and costs of suit.

77. Further, and because the wrongful acts were carried out by PEPPERIDGE's and DEFENDANT DOES employees and managing agents, and encouraged or assisted by PEPPERIDGE, PEPPERIDGE acted with oppressive, fraudulent, or malicious intent, and exhibited a deliberate disregard for the rights and safety of SHERMAN in that they retaliated against SHERMAN for his complaints about perceived violations of California law and the California Labor Code. Accordingly, SHERMAN is entitled to punitive damages, pursuant to California Civil Code section 3294, so as to punish PEPPERIDGE and DEFENDANT DOES and deter it from similar conduct in the future.

**FIFTH CAUSE OF ACTION**
**Breach of Contract**
**[Against All Defendants]**

78. SHERMAN repeats and realleges each and every allegation contained in paragraphs 1 through 65, inclusive, and incorporates the same by reference as if fully set forth herein.

79. SHERMAN entered into a contract with PEPPERIDGE that gave PEPPERIDGE the right to sell SHERMAN's business Fun Stuff Foods, Inc.

80. Pursuant to the terms of the contract, should PEPPERIDGE force a sale of Fun Stuff Foods, Inc., they were contractually bound to give SHERMAN an

1  amount of money based on previous sales for Fun Stuff Foods, Inc. as well as a specific multiplier.

2  81.  PEPPERIDGE elected to force a sale of Fun Stuff Foods, Inc., but from this sale, PEPPERIDGE gave SHERMAN substantially less than the amount that PEPPERIDGE was contractually bound to give SHERMAN from the sale.

82.  In addition, SHERMAN was required to obtain representation to obtain remuneration for a Costco account which PEPPERIDGE chose not to compensate SHERMAN for.

83.  PEPPERIDGE's and DEFENDANT DOES breach of contract was a substantial factor in causing SHERMAN's harm.

84.  As a direct, foreseeable and proximate result of PEPPERIDGE's and DEFENDANT DOES, and each of their behaviors, SHERMAN has suffered damages.

85.  SHERMAN further requests reasonable attorney fees pursuant to the terms of the contract.

## PRAYER FOR RELIEF

WHEREFORE, SHERMAN demands judgment against PEPPERIDGE and DEFENDANT DOES, and their agents and employees as follows:

1. Actual damages, including loss of past earnings, bonuses, deferred compensation, and other employment benefits in an amount according to proof at time of trial;

2. General and special damages, including, but not limited to, pain and suffering, emotional distress, loss of reputation and medical expenses, in an amount according to proof at time of trial;

3. Consequential and incidental damages and expenses, in an amount according to proof at time of trial;

4. Pre-judgment and post-judgment interest, at the prevailing legal rate;

5. As to the First, Second, and Fourth Causes of Action, for punitive

damages in an amount appropriate to punish DEFENDANTS for their wrongful conduct and set an example for others;

6. As to the First Cause of Action, for attorney's fees pursuant to Code of Civil Procedure § 1021.5;

7. As to the Third and Fifth Cause of Action, for reasonable attorney fees pursuant to the terms of the employment contract;

8. For costs of suit incurred herein; and

9. For such other and further relief as the Court may deem just, proper and equitable.

DATED: October 11, 2022                                    SESSIONS & KIMBALL LLP

By: /Larry Herrera/
LARRY HERRERA
Attorneys for plaintiff
TONY SHERMAN

///
///
///
///
///
///
///
///

## **JURY TRIAL DEMAND**

Plaintiff TONY SHERMAN hereby makes a demand for her constitutional right to trial by jury for all triable issues in the above–titled action.

DATED: October 11, 2022                    SESSIONS & KIMBALL LLP


By: __/Larry Herrera/_____

LARRY HERRERA
Attorneys for plaintiff
TONY SHERMAN

SECOND AMENDED COMPLAINT