**SESSIONS & KIMBALL LLP**
Larry Herrera, State Bar No. 278315
23456 Madero, Suite 170
Mission Viejo, California 92691
Tel: (949) 380-0900
Fax: (949) 380-8283

Attorneys for Plaintiff
TONY SHERMAN

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| TONY SHERMAN, an individual, | Case No: 8:22-CV-01781 JWH (ADSx) |
| Plaintiff, | **THIRD AMENDED COMPLAINT** |
| v. | 1) Whistleblower Retaliation (Lab. Code §1102.5); |
| | 2) Breach of Implied Covenant of Good Faith and Fair Dealing; |
| PEPPERIDGE FARM, INC., a Connecticut Corporation; AND DOES 1-50, inclusive, | 3) Breach of Contract; |
| | 4) Breach of Contract |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff TONY SHERMAN hereby complains and alleges as follows:

## PRELIMINARY ALLEGATIONS

1. The amount in controversy is in excess of the minimum jurisdiction of this court.

2. Plaintiff TONY SHERMAN ("SHERMAN") is an individual residing in the State of California, County of Orange.

3. Defendant Pepperidge Farm, Inc ("PEPPERIDGE") is a Connecticut corporation doing business in California, headquartered at 595 Westport Ave,

Norwalk, CT 06851

4. The true names and capacities of DEFENDANT DOES 1 through 50 inclusive, whether individual, corporate, associate, or otherwise, are unknown to SHERMAN, who therefore sues such DEFENDANTS by fictitious names pursuant to Code of Civil Procedure § 474. SHERMAN will amend the Complaint to show their true names and capacities once they have been ascertained. DEFENDANTS PEPPERIDGE FARM, Inc., and DOES 1-50 are hereafter collectively referred to as DEFENDANTS.

5. SHERMAN is further informed and believes, and thereon alleges, that each of the fictitiously named DEFENDANT DOES is responsible in some manner for the occurrences herein alleged, and that SHERMAN's injuries and damages as alleged herein were proximately caused by their conduct.

6. SHERMAN is informed and believes, and thereon alleges, that DEFENDANTS and DEFENDANT DOES, and each of them, at all relevant times herein were the agents, employees, servants, joint venturers, alter egos, parents, subsidiaries, management companies, holding companies, directors, fiduciaries, representatives, and/or co-conspirators of each of the remaining DEFENDANTS and DEFENDANT DOES. DEFENDANTS and DEFENDANT DOES, in doing the things hereinafter alleged, were acting within the course and scope of such relationships and are responsible in some manner for the occurrences herein alleged and, as a proximate cause, of SHERMAN's damages as herein alleged.

## FACTUAL BACKGROUND

7. In or about 1991, SHERMAN invested in a standard PEPPERIDGE consignment contract on behalf of his corporation, Fun Stuff Food, Inc. (Hereinafter "Fun Stuff").

8. Sherman was the sole shareholder in Fun Stuff at all times relevant to this complaint, and was the sole shareholder at all times during which Fun Stuff was an active legal entity.

9. Sherman was the sole member of the board of directors for Fun Stuff at all times relevant to this complaint, and was the sole member of the board of directors at all times during which Fun Stuff was an active legal entity.

10. As sole shareholder and sole board member, making a request to the board of directors would be futile as SHERMAN would be making a request of himself.

11. As the only person having an ownership interest in Fun Stuff, SHERMAN would significantly benefit from the contract between Fun Stuff and PEPPERIDGE as all income generated by Fun Stuff through the contract, which would in fact be money paid to Fun Stuff for services that Sherman provided to PEPPERIDGE, would go to SHERMAN.

12. SHERMAN would not benefit from the contract between Fun Stuff and PEPPERIDGE as a shareholder who has an interest in Fun Stuff's success because it would impact share prices, but rather SHERMAN would benefit directly from the contract because all revenue that PEPPERDIGE paid to Fun Stuff would go directly to SHERMAN.

13. The contract between Fun Stuff and PEPPERIDGE refers Fun Stuff as consignee, however there are many instances in the contract where it is clear that PEPPERIDGE knew and intended for "consignee" to be SHERMAN as an individual rather than Fun Stuff as a corporation. Examples include provisions stating the following:

- "If, by reason of illness, vacation, or any other cause, Consignee shall be unable at any time to provide the efficient distribution service contemplated by this Agreement…"
- "Consignee shall maintain Consignee's general appearance and deportment…."
- "Consignee may use Bakery's trade name, trademark and distinguishing colors on his/her truck…"

- "Consignee is a self-employed independent businessman…"
- "PERSONAL SERVICES.  Bakery has entered into this Agreement with Consignee based in part upon Bakery's understanding of Consignee's qualifications for the operation and management of the Distributorship.  Consignee understands this this Agreement requires Consignee's personal, full-time involvement in the management and operation of the Distributorship, and Consignee agrees, except as is otherwise pennitted (sic) by the tenns(sic) of Paragraph 6, actively and personally to operate and manage the Distributorship."
- "DEATH OF CONSIGNEE.  In case of Consignee's death…"

14. Each of the clauses in the contract between PEPPERIDGE and Fun Stuff cited above indicate that Pepperidge knew that it was in fact contracting with Sherman as an individual and not Fun Stuff as a corporation, and that the benefits conferred in the contract were for SHERMAN.

15. The contract was intended to benefit the Consignee in that the contract was intended to generate income for Consignee.

16. SHERMAN is not merely an employee or shareholder of Fun Stuff, he is the sole owner of Fun Stuff and PEPPERIDGE knew it was in fact contracting with SHERMAN.

17. Accordingly, the terms of the contract demonstrate an express intent to confer the benefits of the contract upon SHERMAN.

18. Because PEPPERIDGE and Fun Stuff knew that the benefits to "Consignee" in the contract were in fact for SHERMAN, the parties would reasonably expect that SHERMAN would have standing to sue to enforce the terms of the contract.

19. For decades, SHERMAN, through Fun Stuff, provided PEPPERIDGE consigned products directly to accounts within his exclusive sales territory.

20. In or around 2017, SHERMAN was elected President of the

Pepperidge Owners Association of America (hereinafter "POAA"), which is the national trade association comprised of Pepperidge Farm distributors.

21. In or around 2019, several individuals from several states including California, Illinois, and Massachusetts sued PEPPERIDGE to address the misclassification of POAA members as independent contractors.

22. SHERMAN and POAA aggressively worked to make POAA members aware of the employment misclassification class action lawsuits against PEPPERIDGE.

23. In or around January 2020, following a proposed consolidated settlement agreement being reached between PEPPERIDGE and the counsel for the class representatives, SHERMAN objected to the proposed consolidated class settlement.

24. SHERMAN objected to the settlement agreement and continued to inform current and former class members that the settlement agreement drafted by PEPPERIDGE contained substantially more than a specific release of wage-related claims, because the proposed settlement would also result in the material alterations of existing contract rights. PEPPERIDGE had forced these terms into a proposed settlement agreement, despite these terms having not been discussed or negotiated.

25. Throughout the first part of 2021, SHERMAN used his platform as the president of POAA to vocally oppose a revised version of a settlement agreement that PEPPERIDGE had prepared.

26. This revised agreement again contained provisions that would breach existing contractual rights that POAA members had with PEPPERIDGE.

27. SHERMAN informed POAA members that the settlement agreement would breach existing contractual rights.

28. The contractual rights that SHERMAN complained about related to PEPPERIDGE being allowed to pass any cost onto POAA members, which

violated the contractual terms that POAA members had with PEPPERIDGE in the Distributorship Agreement that each POAA member had with PEPPERIDGE.

29. SHERMAN also made many of his complaints of the alleged breach of contract on public internet forums that could be accessed by anyone.

30. Upon information and belief, individuals involved in the decision to terminate Fun Stuff's contract with PEPPERIDGE were aware of SHERMAN's complaints of a breach of contract.

31. Breach of contract is a violation of California common law.

32. Applicable contract laws require the parties to the contract to abide by its terms and not engage in conduct that would violate the terms of the contract or enter into other contracts that would evidence an intent to breach a contract.

33. SHERMAN's complaints described above were that the settlement agreement that PEPPERIDGE was attempting to force upon class members

34. In May and June 2021, SHERMAN made the objections described aboveto an updated settlement agreement once again. The updated settlement agreement would again force breaches to existing contracts between PEPPERIDGE and POAA members in a way that was adverse to POAA members.

35. SHERMAN was the most vocal voice amongst distributors in objecting to the settlement agreement and encouraging class members to seek independent counsel to review the settlement agreement and object to it as well.

36. As a result, PEPPERIDGE began to retaliate against SHERMAN for his objection.

37. On or around June 3, 2021, after SHERMAN's objection to the settlement agreement, PEPPERIDGE notified SHERMAN of alleged misconduct that he engaged in at Target store 2304 in May of 2021 before his objection.

38. On or around June 14, 2021, SHERMAN provided PEPPERIDGE a response, denying any wrongdoing.

39. In addition, SHERMAN notified PEPPERIDGE that he had already

taken remedial measures by having one of his employees make all deliveries to this Target so SHERMAN would never have to enter that store again.

40. On or around July 7, 2021, PEPPERIDGE demanded SHERMAN to describe once again his role in the alleged wrongdoing at Target 2304. Once again SHERMAN denied any wrongdoing and informed PEPPERIDGE once again that he had took remedial measures so SHERMAN would never have to enter that Target again.

41. That PEPPERIDGE asked SHERMAN for further clarification and explanation on July 7, 2021 evidences that PEPPERIDGE had not decided to terminate SHERMAN at that time.

42. On or around July 10, 2021, SHERMAN filed a Notice of Intent to File Objection to the proposed settlement agreement that PEPPERIDGE had drafted.

43. On or around July 21, 2021, PEPPERIDGE terminated SHERMAN's contract (through Fun Stuff Foods, Inc.), only 11 days after SHERMAN filed his Notice of Intent to File Objection.

44. PEPPERIDGE had not decided to terminate Fun Stuff's contract until after SHERMAN filed his final objection to the settlement agreement.

45. PEPPERIDGE retaliated against SHERMAN by terminating his employment because of SHERMAN's role as POAA President, leading objector to the proposed settlement, and because SHERMAN complained that the settlement agreement that PEPPERIDGE was insisting upon would constitute a violation of California law by breaching existing contracts.

46. At all times relevant hereto, SHERMAN was misclassified as an independent contractor of PEPPERIDGE when he should have been classified as an employee.

47. After terminating SHERMAN, PEPPERIDGE exercised its right to sell SHERMAN's business, Fun Stuff Foods, Inc.

48. Pursuant to the contract that SHERMAN had with PEPPERIDGE, PEPPERIDGE was to give SHERMAN a specific value for the sale of Fun Stuff Foods, Inc. This value was to be calculated based on Fun Stuff Inc. sales over a specific period of time, and a specific multiplier.

49. PEPPERIDGE did not apply this formula properly, and accordingly provided SHERMAN with substantially less than the contractual amount that PEPPERIDGE was supposed to give SHERMAN for the sale of Fun Stuff Foods, Inc.

50. During the time that SHERMAN provided services for PEPPERIDGE, PEPPERIDGE controlled the manner in which SHERMAN was to conduct the services PEPPERIDGE required him to perform.

51. SHERMAN's distribution contract with PEPPERIDGE established that PEPPERIDGE controlled and directed all manner of the way SHERMAN was to perform his services for PEPPERIDGE. This included the manner in which SHERMAN was to dress and maintain his vehicle, conduct himself while interacting with retailers, efforts to expand PEPPERIDGE's business within SHERMAN's region, the amount of PEPPERIDGE product SHERMAN must accept, the type of records that SHERMAN must maintain and provide to PEPPERIDGE relating to FUN STUFFS's operations, penalties for failing to perform services for PEPPERIDGE, allowed SHERMAN to use PEPPERIDGE's trade name and trademark, insurance requirements, and requirements that SHERMAN personally perform services for PEPPERIDGE.

52. The services that SHERMAN provided for PEPPERIDGE were within the usual course of PEPPERIDGE's business, which was to sell food.

53. PEPPERIDGE's primary business was selling food, and SHERMAN took PEPPERIDGE's food and sold it to retailers. Accordingly, the services that SHERMAN provided for PEPPERIDGE were within the company's normal course of business.

54. People who deliver baked goods to retailers as SHERMAN did, are typically employees of manufacturers like PEPPERIDGE.

55. SHERMAN held himself out as a representative of PEPPERIDGE through PEPPERIDGE allowing SHERMAN to use PEPPERIDGE's trademark, colors, and tradename.

### FIRST CAUSE OF ACTION
### Whistleblower Retaliation
### (Violations of Lab. Code §1102.5)
### [Against All Defendants]

56. SHERMAN realleges and hereby incorporates by reference the allegations of paragraphs 1 through 28, inclusive, with the same force and effect as if said paragraphs were fully set forth herein.

57. At all times material hereto, SHERMAN was an employee protected by Labor Code § 1102.5(b), which prohibits whistleblower retaliation.

58. At all times material hereto, PEPPERIDGE and DEFENDANT DOES were employers within the meaning of California Labor Code §1132.2., and as such were prohibited from engaging in whistleblower retaliation.

59. Sherman complained about PF engaging in conduct that was a breach of contract, and breaching a contract is a violation of California common law as well as Federal law.

60. SHERMAN also had reasonable cause to believe that the information he disclosed evidenced a violation of applicable laws and PEPPERIDGE's policies.

61. Employees with PEPPERIDGE who had authority over SHERMAN and could investigate his complaints, knew that SHERMAN made complaints that PEPPERIDGE was attempting to breach existing contracts by forcing terms into the aforementioned settlement agreement that breached the existing contracts.

62. PEPPERIDGE and DEFENDANT DOES retaliated against SHERMAN by terminating his employment after his objection to the proposed settlement agreement.

63. In addition to objections to the settlement agreement based on violation of law that were posted on public internet forums that individuals involved in SHERMAN's termination were aware of, SHERMAN filed an objection to the settlement agreement just days before PEPPERIDGE decided to fire him.

64. After nearly 30 years working with PEPPERIDGE, Sherman's contract with PEPPERIDGE was terminated just weeks after SHERMAN's most recent complaints of the illegal conduct above.

65. PEPPERIDGE's stated non-discriminatory reason for terminating SHERMAN is pre-text to cover up PEPPERIDGE's retaliatory motive.

66. SHERMAN'S complaints of illegal conduct by PEPPERIDGE was a substantial contributing factor in PEPPERIDGE's, and DEFENDANT DOES decision to subject SHERMAN to the adverse employment actions.

67. As a direct, foreseeable and proximate result of PEPPERIDGE's and DEFENDANT DOES and each of their behaviors, SHERMAN has suffered, and continues to suffer, substantial losses in past and future earnings, bonuses, deferred compensation and other employment benefits, all to SHERMAN's damage in an amount according to proof at trial.

68. As a further direct, foreseeable and proximate result of PEPPERIDGE's and DEFENDANT DOES and each of their behaviors, SHERMAN has suffered and incurred, and is presently suffering and incurring, serious harm and damage to SHERMAN's personal and professional reputation and credibility all the SHERMAN's damage in an amount according to proof at trial.

69. As a result of further direct, foreseeable and proximate result of

PEPPERIDGE's and DEFENDANT DOES and each of their behaviors, SHERMAN has suffered, and continues to suffer, severe and lasting embarrassment, humiliation, mental anguish and emotional distress, and incidental and consequential damages and expenses, all to SHERMAN's damage in an amount according to proof at trial.

70. SHERMAN is informed and believes, and thereon alleges, that PEPPERIDGE's and DEFENDANT DOES committed the acts described herein deliberately, callously, maliciously, fraudulently and in an oppressive manner intended to injure SHERMAN and that such improper motives amounted to malice and a conscious disregard of SHERMAN's rights as set forth herein. In doing the acts as herein alleged, the manager was acting pursuant to the authorization of PEPPERIDGE and DEFENDANT DOES. An award of punitive damages against PEPPERIDGE's and DEFENDANT DOES is therefore warranted.

71. As a result of the retaliatory conduct of PEPPERIDGE's and DEFENDANT DOES and each of them, as alleged herein, SHERMAN is entitled to costs of suit, including reasonable attorney's fees, pursuant to Labor Code § 1021.5, in according to proof at trial.

## SECOND CAUSE OF ACTION
### Breach of Implied Covenant of Good Faith and Fair Dealing
### [Against All Defendants]

72. SHERMAN repeats and realleges each and every allegation contained in paragraphs 1 through 40, inclusive, and incorporates the same by reference as if fully set forth herein.

73. At all times material herein, SHERMAN was employed by PEPPERIDGE and DEFENDANT DOES.

74. SHERMAN entered into a contract with PEPPERIDGE that listed 15 categories which PEPPERIDGE can rely on as a lawful basis for terminating the contract between SHERMAN and PEPPERIDGE.

75. SHERMAN satisfied all his responsibilities under his contract. However, PEPPERIDGE and DEFENDANT DOES retaliated against SHERMAN for his complaints about being misclassified, and because SHERMAN pointed out that the proposed settlement agreement contained a number of terms that PEPPERIDGE and DEFENDANT DOES tried to force into the agreement that would have breached contracts that POAA members had with PEPPERIDGE and caused them lose their protections.

76. PEPPERIDGE's reason which they are relying upon as a justification for terminating SHERMAN does not rise to the level mentioned in any of the 15 categories listed in the contract.

77. PEPPERIDGE and DEFENDANT DOES interpreted the terms of the contract in bad-faith, in order to terminate SHERMAN despite SHERMAN having not engaged in any conduct that would give PEPPERIDGE the right to terminate SHERMAN.

78. PEPPERIDGE's and DEFENDANT DOES actions were a substantial factor in causing SHERMAN's harm.

79. As a direct, foreseeable and proximate result of PEPPERIDGE's and DEFENDANT DOES behavior, SHERMAN has suffered, and continues to suffer, substantial losses in past income, bonuses, deferred compensation, and other employment benefits, all to SHERMAN's damage in an amount according to proof at trial.

80. SHERMAN is informed and believes, and thereon alleges, that PEPPERIDGE's and DEFENDANT DOES committed the acts described herein deliberately, callously, maliciously, fraudulently and in an oppressive manner intended to injure SHERMAN and that such improper motives amounted to malice and a conscious disregard of SHERMAN's rights. An award of punitive damages against PEPPERIDGE and DEFENDANT DOES is therefore warranted.

81. At all times relevant herein, SHERMAN was a third-party beneficiary to

the contract between PEPPERIDGE AND FUN STUFF.

### THIRD CAUSE OF ACTION
### Breach of Contract
### [Against All Defendants]

82. SHERMAN repeats and realleges each and every allegation contained in paragraphs 1 through 49, inclusive, and incorporates the same by reference as if fully set forth herein.

83. At all times relevant herein, SHERMAN was a third-party beneficiary to the contract between PEPPERIDGE AND FUN STUFF.

84. SHERMAN entered into a contract with PEPPERIDGE and DEFENDANT DOES that listed 15 categories which PEPPERIDGE can rely on as a lawful basis for terminating the contract between SHERMAN and PEPPERIDGE.

85. PEPPERIDGE's reason which they are relying upon as a justification for terminating SHERMAN does not rise to the level mentioned in any of the 15 categories listed in the contract.

86. PEPPERIDGE terminated SHERMAN in breach of the contract SHERMAN had with PEPPERIDGE.

87. PEPPERIDGE's and DEFENDANT DOES breach of contract was a substantial factor in causing SHERMAN's harm.

88. As a direct, foreseeable and proximate result of PEPPERIDGE's and DEFENDANT DOES, and each of their behaviors, SHERMAN has suffered damages.

89. SHERMAN further requests reasonable attorney fees pursuant to the terms of the contract.

### FOURTH CAUSE OF ACTION
### Breach of Contract
### [Against All Defendants]

90. SHERMAN repeats and realleges each and every allegation contained in paragraphs 1 through 65, inclusive, and incorporates the same by reference as if fully set forth herein.

91. SHERMAN entered into a contract with PEPPERIDGE that gave PEPPERIDGE the right to sell SHERMAN's business Fun Stuff Foods, Inc.

92. Pursuant to the terms of the contract, should PEPPERIDGE force a sale of Fun Stuff Foods, Inc., they were contractually bound to give SHERMAN an amount of money based on previous sales for Fun Stuff Foods, Inc. as well as a specific multiplier.

93. PEPPERIDGE elected to force a sale of Fun Stuff Foods, Inc., but from this sale, PEPPERIDGE gave SHERMAN substantially less than the amount that PEPPERIDGE was contractually bound to give SHERMAN from the sale.

94. In addition, SHERMAN was required to obtain representation to obtain remuneration for a Costco account which PEPPERIDGE chose not to compensate SHERMAN for.

95. PEPPERIDGE's and DEFENDANT DOES breach of contract was a substantial factor in causing SHERMAN's harm.

96. As a direct, foreseeable and proximate result of PEPPERIDGE's and DEFENDANT DOES, and each of their behaviors, SHERMAN has suffered damages.

97. SHERMAN further requests reasonable attorney fees pursuant to the terms of the contract.

98. At all times relevant herein, SHERMAN was a third-party beneficiary to the contract between PEPPERIDGE AND FUN STUFF.

## **PRAYER FOR RELIEF**

WHEREFORE, SHERMAN demands judgment against PEPPERIDGE and DEFENDANT DOES, and their agents and employees as follows:

1. Actual damages, including loss of past earnings, bonuses, deferred compensation, and other employment benefits in an amount according to proof at time of trial;

2. General and special damages, including, but not limited to, pain and suffering, emotional distress, loss of reputation and medical expenses, in an amount according to proof at time of trial;

3. Consequential and incidental damages and expenses, in an amount according to proof at time of trial;

4. Pre-judgment and post-judgment interest, at the prevailing legal rate;

5. As to the First, Second, and Fourth Causes of Action, for punitive damages in an amount appropriate to punish DEFENDANTS for their wrongful conduct and set an example for others;

6. As to the First Cause of Action, for attorney's fees pursuant to Code of Civil Procedure § 1021.5;

7. As to the Third and Fifth Cause of Action, for reasonable attorney fees pursuant to the terms of the employment contract;

8. For costs of suit incurred herein; and

9. For such other and further relief as the Court may deem just, proper and equitable.

DATED: May 11, 2023                    SESSIONS & KIMBALL LLP

By: _____
LARRY FERRERA
Attorneys for plaintiff
TONY HERMAN

## JURY TRIAL DEMAND

Plaintiff TONY SHERMAN hereby makes a demand for her constitutional right to trial by jury for all triable issues in the above–titled action.

DATED: May 11, 2023          SESSIONS & KIMBALL LLP

By: _____

LARRY HERRERA
Attorneys for plaintiff
TONY SHERMAN