UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONY SHERMAN, an individual,<br><br>      Plaintiff,<br><br>  v.<br><br>PEPPERIDGE FARM, INC., a Connecticut corporation; and DOES 1 to 50, inclusive,<br><br>      Defendants. | Case No. 8:22-cv-01781-JWH-ADS<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT [ECF No. 38]** |

Before the Court is the motion of Defendant Pepperidge Farm, Inc. to dismiss the third amended complaint of Plaintiff Tony Sherman.[1] After considering the papers filed in support and opposition,[2] the Court orders that the Motion is **GRANTED**, for the reasons set forth herein.

## I.  BACKGROUND

### A.  Procedural History

Sherman filed this lawsuit in Orange County Superior Court in July 2022,[3] and Pepperidge Farm removed it to this Court two months later.[4] In April 2023, the Court granted Pepperidge Farm's motion to dismiss Sherman's Second Amended Complaint in its entirety.[5] The Court also took judicial notice of the existence of the public records listed in Pepperidge Farm's Request for Judicial Notice[6] and granted Sherman leave to amend his complaint.[7]

Sherman filed his Third Amended Complaint in May 2023,[8] in which he asserts the following four claims for relief:

- violations of Cal. Lab. Code § 1102.5 (whistleblower retaliation);
- breach of the implied covenant of good faith and fair dealing;
- breach of contract (related to contract termination); and
- breach of contract (related to a valuation dispute).[9]

---

[1] Def.'s Mot. to Dismiss the Third Am. Compl. (the "Motion") [ECF No. 38].

[2] The Court considered the documents of record in this action, including the following papers: (1) Third Am. Compl. (the "Third Amended Complaint") [ECF No. 37]; (2) Motion (including its attachments); (3) Pl.'s Opp'n to the Motion (the "Opposition") [ECF No. 40]; and (4) Def.'s Reply in Supp. of the Motion (the "Reply") [ECF No. 41].

[3] Compl. [ECF No. 1-1] 27-37.

[4] Notice of Removal [ECF No. 1].

[5] Order Granting Def.'s Motion to Dismiss Second Amended Complaint (the "Order") [ECF No. 36].

[6] See Def.'s Req. for Judicial Notice (the "RJN I") [ECF No. 16].

[7] See generally Order.

[8] See generally Third Amended Complaint.

[9] Id. at ¶¶ 56-98.

Pepperidge Farm filed the instant Motion to dismiss in June 2023,[10] and it is fully briefed.[11]

## B.   Factual Summary

In 1991, Sherman invested in a consignment contract with Pepperidge Farm on behalf of Sherman's corporation, non-party Fun Stuff Food, Inc.[12]  Under that agreement (the "Consignment Agreement"), and in his capacity as the "sole shareholder and sole board member" of Fun Stuff, Sherman provided Pepperidge Farm-consigned products to accounts within Sherman's exclusive sales territory.[13]

Although the Consignment Agreement refers to Fun Stuff as the "consignee," language in the contract indicates that "Pepperidge knew and intended for 'consignee' to be Sherman as an individual rather than Fun Stuff as a corporation."[14]  Examples of those provisions are as follows:

- "If, by reason of illness, vacation, or any other cause, Consignee shall be unable at any time to provide the efficient distribution service contemplated by this Agreement . . ."
- "Consignee shall maintain Consignee's general appearance and deportment . . ."
- "Consignee may use Bakery's trade name, trademark and distinguishing colors on his/her truck . . ."
- "Consignee is a self-employed independent businessman . . ."
- "PERSONAL SERVICES.  Bakery has entered into this Agreement with Consignee based in part upon Bakery's understanding of Consignee's qualifications for the operation and management of the Distributorship.  Consignee understands this this Agreement requires Consignee's personal, full-time involvement in the management and operation of the Distributorship, and Consignee agrees, except as is otherwise pennitted [sic] by the tenns [sic] of Paragraph 6, actively and personally to operate and manage the Distributorship."
- "DEATH OF CONSIGNEE.  In case of Consignee's death . . ."[15]

---

[10]   *See generally* Motion.

[11]   *See generally* Opposition; Reply.

[12]   Third Amended Complaint ¶¶ 6, 7, & 9.

[13]   *Id.* at ¶¶ 10 & 19.

[14]   *Id.* at ¶ 13.

[15]   *Id.*

In 2019, several individuals sued Pepperidge Farm to address the alleged misclassification of members of the Pepperidge Owners Association of America (the "POAA") as independent contractors (the "*Alfred* Action").[16] At the time, Sherman was the president of the POAA,[17] and he "aggressively worked to make POAA members aware of the employment misclassification class action lawsuits against" Pepperidge Farm.[18]

In January 2020, Sherman objected to the proposed consolidated class settlement in the *Alfred* Action.[19] More than a year later, in early 2021, Sherman used his platform as the president of POAA to oppose a revised version of a settlement agreement that Pepperidge Farm had prepared.[20] Specifically, Sherman informed POAA members that the settlement agreement would breach existing contractual rights that POAA members had with Pepperidge.[21]

Sherman alleges upon information and belief that individuals involved in the decision to terminate Fun Stuff's contract with Pepperidge Farm were aware of Sherman's objections.[22] Sherman also posted many of his complaints on public internet forums that could be accessed by anyone.[23]

"In May and June 2021" Sherman objected to an updated settlement agreement in the *Alfred* Action,[24] asserting once again that the updated settlement agreement would force changes to existing contracts between Pepperidge Farm and POAA members in a way that was adverse to POAA members.[25]

Throughout the settlement process, Sherman maintains that he was "the most vocal voice amongst distributors in objecting to the settlement agreement."[26] Sherman

---

| | | |
|---|---|---|
| 16 | | *Id.* at ¶ 21. |
| 17 | | *Id.* at ¶ 20. |
| 18 | | *Id.* at ¶ 22. |
| 19 | | *Id.* at ¶ 23. |
| 20 | | *Id.* at ¶ 25. |
| 21 | | *Id.* at ¶¶ 26-27. |
| 22 | | *Id.* at ¶ 30. |
| 23 | | *Id.* at ¶ 29. |
| 24 | | *Id.* at ¶ 34. |
| 25 | | *Id.* |
| 26 | | *Id.* at ¶ 35. |

also encouraged class members to seek independent counsel to review the settlement agreement and to object to it.[27]

Eventually, Sherman faced retaliation for his advocacy efforts.[28] On June 3, 2021, Pepperidge Farm confronted Sherman regarding his alleged misconduct the previous month at a Target store.[29] Later, on June 14, 2021, Sherman "provided [Pepperidge Farm] with a response, denying any wrongdoing."[30] Sherman also informed Pepperidge Farm that, since the incident, he had taken remedial measures by having one of his employees make all deliveries to the Target store, so that Sherman would not have a need to enter the store again.[31]

A few weeks later, Pepperidge Farm demanded that Sherman describe once again his role in the alleged wrongdoing at the Target store.[32] Sherman once again was quick to deny any wrongdoing, and he informed Pepperidge Farm of the remedial measures that he had taken.[33]

On or around July 10, 2021, Sherman filed a Notice of Intent to File Objection to another proposed settlement agreement in the *Alfred* Action.[34] Thereafter, on July 21, 2021, Pepperidge Farm terminated Sherman's contract (through Fun Stuff)—11 days after Sherman filed his Notice of Intent to File Objection.[35] According to Sherman, Pepperidge Farm did not decide to terminate Fun Stuff's contract until after Sherman filed his final objection to the settlement agreement.[36] After terminating Sherman, Pepperidge exercised its right to sell Sherman's business, Fun Stuff.[37]

In his Third Amended Complaint, Sherman asserts that he was misclassified as an independent contractor, when he should have been classified as a Pepperidge Farm employee.[38] For instance, Sherman alleges that Pepperidge Farm controlled the manner

---

[27] *Id.*
[28] *Id.* at ¶ 36.
[29] *Id.* at ¶ 37.
[30] *Id.* at ¶ 38.
[31] *Id.* at ¶ 39.
[32] *Id.* at ¶ 40.
[33] *Id.*
[34] *Id.* at ¶ 42.
[35] *Id.* at ¶ 43.
[36] *Id.* at ¶ 44.
[37] *Id.* at ¶ 47.
[38] *Id.* at ¶ 46.

...

in which Sherman worked.[39] Sherman also avers that he held himself out as a representative of Pepperidge Farm,[40] that he provided services for Pepperidge Farm that were in the usual course of Pepperidge Farm's business,[41] and that Pepperidge Farm allowed Sherman to use Pepperidge Farm's trademark, colors, and tradename.[42]

## II.  LEGAL STANDARD

### A.   Rule 12(b)(6)

The Federal Rules of Civil Procedure provide that a defendant may move to dismiss a complaint for failure to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  To survive such a motion, the complaint must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A complaint need not contain "detailed factual allegations," but it must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"[T]o be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *AE* ex rel. *Hernandez v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012).  "[T]he factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.*  In addition, "a court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

### B.   Request for Judicial Notice

Generally, a district court's review of a Rule 12(b)(6) motion to dismiss is "limited to the complaint." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir.

---

[39]   *Id.* at ¶ 50.

[40]   *Id.* at ¶ 55.

[41]   *Id.* at ¶ 52.

[42]   *Id.* at ¶ 55.

2002) (quoting *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993)). Consideration of extrinsic evidence ordinarily converts a Rule 12(b)(6) motion to dismiss into a summary judgment motion. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). However, there are two exceptions to this rule. "First, a court may consider 'material which is properly submitted as part of the complaint.'" *Id.* (quoting *Branch v. Tunnell*, 14 F.3d 449, 455 (9th Cir. 1994)). "If the documents are not physically attached to the complaint, they may be considered if the documents' 'authenticity . . . is not contested' and 'the plaintiff's complaint necessarily relies' on them." *Id.* (quoting *Parrino v. FHP, Inc.*, 146 F.3d 699, 705–06 (9th Cir. 1998)). Second, a court may take judicial notice of matters of public record. *Id.* at 688–89 (citing *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986) (internal quotations omitted)).

### III.  ANALYSIS

#### A.  Requests for Judicial Notice

Pepperidge Farm requests that the Court take judicial notice of the civil docket as of May 31, 2023, of the case captioned as *Alfred v. Pepperidge Farm, Inc.*, Case No. 2:14-cv-07086 (C.D. Cal.).[43] Sherman does not object.

Pepperidge Farm's request—labeled "Exhibit A"—is a public record. The Federal Rules of Evidence allow a court to take judicial notice of facts that are "not subject to reasonable dispute" because either (1) they are "generally known with the trial court's territorial jurisdiction"; or (2) they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The accuracy of this district's civil docket is the kind of public document whose accuracy cannot reasonably be questioned. Accordingly, the Court takes judicial notice of Exhibit A. Pepperidge Farm's requests for judicial notice is **GRANTED**.

#### B.  Second, Third, and Fourth Claims for Relief:  Third Party Standing

Sherman asserts three contract claims against Pepperidge Farm. Each is based upon the Consignment Agreement that Sherman entered into with Pepperidge Farm, on behalf of Fun Stuff.[44]

---

[43]   Def.'s Req. for Judicial Notice (the "RJN II") [ECF No. 39].
[44]   Third Amended Complaint ¶¶ 6, 7, & 9.

The Court dismissed Sherman's contract and quasi-contract claims in his previous pleading—the Second Amended Complaint[45]—because Sherman failed to satisfy the three-factor test set forth in *Goonewardene v. ADP, LLC*, 6 Cal. 5th 817 (2019).[46] The *Goonewardene* test analyzes (1) whether the third-party would in fact benefit from the contract; (2) whether a motivating purpose of the contract was to provide a benefit to the third-party; and (3) whether permitting a third-party to bring its own breach of contract action against a contracting party is consistent with the objectives and reasonable expectations of the contract. *See id.* at 830. For a third-party action to proceed, all three elements must be satisfied. *See id.*

Applying the principles set forth in *Goonewardene*, the Court primarily held that Sherman's "mere shareholder status" did not empower Sherman to enforce the Consignment Agreement as a third-party beneficiary.[47] The Court's decision rested on well-established precedent holding that "economic injury to a shareholder cannot support a personal cause of action." *See Jara v. Suprema Meats, Inc.*, 121 Cal. App. 4th 1238, 1253 (2004).[48] The Court also concluded that nothing in the Consignment Agreement evinced an express intent to benefit Sherman and that the Second Amended Complaint did not allege that permitting Sherman to sue on the contract is necessary to effectuate the contract's objectives or is consistent with the reasonable expectations of the parties.[49]

With respect to the instant Motion, the parties continue to spar over the same argument: can a shareholder maintain an action on his own behalf for a wrong done by a third person? On this question, Pepperidge Farm maintains that a shareholder cannot.[50] Pepperidge Farm also contends that Sherman's new allegations relating to his shareholder status, which appears in Paragraphs 11, 12, and 16 of the Third Amended Complaint, incorrectly assume that Sherman's "sole shareholder of Fun Stuff Food" somehow "requires a different analysis" and is sufficient to confer third-party beneficiary status.[51] Sherman counters that he does not rely on his shareholder status as the sole basis for his standing to sue on the contract between Pepperidge Farm and Fun Stuff.

---

[45]   *See* Second Am. Compl. (the "Second Amended Complaint") [ECF No. 13].

[46]   Order 7:22-11:12.

[47]   *Id.* at 9:22-10:6.

[48]   *Id.* at 9:4-6.

[49]   *Id.* at 10:7-11:6.

[50]   Motion 12:7-16 (citing *Von Brimer v. Whirlpool Corp.*, 536 F.2d 838 846 (9th Cir. 1976), for the proposition that a "settled principle in California law that economic injury to a shareholder cannot support a personal cause of action" and *Jara*, 121 Cal. App. 4th at 1253, a case that explains that this rule is a "procedural bar firmly rooted in a long line of precedent").

[51]   *Id.* at 12:17-21.

Sherman urges that the Third Amended Complaint does not merely allege that he would benefit from the contract because the value of his stock in Fun Stuff might increase, but that he would also benefit "because the contract itself created Sherman's job and all revenue paid to Fun Stuff for services that Sherman performed went to Sherman."[52]

While Sherman is correct that the third-party beneficiary doctrine is an available legal theory, his allegations in the Third Amended Complaint fail to establish that Pepperidge Farm and Fun Stuff intended to confer a benefit upon Sherman as a third-party beneficiary to their contract. Indeed, Sherman's novel argument fails for two reasons. First, as the Court previously held with respect to the Second Amended Complaint, the fact that "all payments made to Fun Stuff would go exclusively to [Sherman]" was not enough to confer third-party beneficiary status on a shareholder.[53] Second, disappointingly, Sherman does not cite any legal authority for the new theory that he now advances here: "that corporations with sole shareholders operate under different rules than corporations with two, two hundred or two million shareholders."[54] Sherman also does not distinguish two cases that Pepperidge Farm cites for the proposition that even "sole shareholders" cannot be conferred third-party status.

In *AMESCO Exports, Inc. v. Associated Aircraft Mfg. & Sales, Inc.*, 977 F. Supp. 1014, *order vacated on reconsideration on other grounds*, 87 F. Supp. 2d 1013 (C.D. Cal. 1997), the sole shareholder of an export company sought to recover the commissions that he was allegedly owed on two contracts. However, as here, only the export company was a party to both contracts. *See id.* at 1015. The *AMESCO* court ultimately held that the sole shareholder did not have third-party standing.

Although *AMESCO* predates *Goonewardene*, the Court still finds *AMESCO* persuasive. For instance, as here, the relevant question in *AMESCO* was whether "the contract [was] made expressly for the benefit of a third person. California Civil Code § 1559." *Id.* at 1016. The shareholder in AMESCO also pressed an argument similar to that of Sherman here: that the "defendant knew the contracts were for the purpose of benefiting him as an individual as he had hundreds of conversations with [the principal] of the defendant company over a number of years." *Id.* at 1015. In that case, the court ultimately held:

> Further, the court should not even find that where the corporation only has one shareholder, as here, that the shareholder is a third party beneficiary of any contract of which the corporation is a signatory because that would defeat

---

[52] Opposition 9:15-20.

[53] Order 9:24-10:6.

[54] Reply 5:3-7.

> the purpose of creating the corporation and using it as the signatory. That is, when one creates a corporation as the sole shareholder and uses the corporation to sign contracts, the person is using the corporation as a shield from individual liability. To allow that individual to sue on a contract signed only by the corporation would be to allow that person the benefits of a corporation without the limitations. If one wishes to preserve the right to sue as an individual in this situation, one may sign the contract as an individual.

*Id.*

Therefore, as in *AMESCO*, it should not matter that Sherman was the sole shareholder and that Pepperidge Farm "knew he was behind the corporation and would do the work and receive the money in the end." *Id.* at 1016. Sherman "[chose] to use the corporation as the signatory and he shall be held to the consequences of that decision." *Id.*

The other case that Pepperidge Farm cites is *Schulz v. Cisco Webex, LLC*, 2014 WL 2115168 (N.D. Cal. May 20, 2014). In that case, the issue was whether the plaintiff had standing to assert a contract claim against defendant Cisco because she was not a party to the contract at issue, of which the parties were Cisco and defendant's company, "ML." *Id.* at *3. Here again, the plaintiff advanced the argument that she was a third-party beneficiary for reasons similar to those advanced by Sherman here: that "ML and Cisco entered into the contract for her benefit and were undoubtedly aware that the purpose of the Agreement was for Dr. Schulz, and no one else, to give online lectures and seminars and to use Defendants' services for her live courses and presentations." *Id.* at 3 (quotations omitted). In a footnote, the *Schulz* court observed that if "Dr. Schulz and ML are one and the same . . . the Court is persuaded that 'an individual who creates a corporation as the sole shareholder and uses the corporation to sign contracts' should not be permitted to enjoy the 'benefits of a corporation without the limitation.'" *Id.* at *4 n.5 (citation and quotation omitted). Construing the facts in the Complaint in the light most favorable to the plaintiffs, the *Schulz* court nevertheless concluded that the plaintiffs failed to state a claim for relief by Schulz as an intended third-party beneficiary of the contract between ML and Cisco. *See id.* at *5. Sherman does not distinguish *AMESCO* or *Schultz*.

Finally, Sherman's attempt to distinguish *Jara* does not move the needle in his favor. While Sherman is correct that *Jara* does not primarily concern third-party beneficiary rights,[55] the Court observes that Pepperidge Farm referred to *Jara* for the generalized principle that a shareholder may not maintain an action in his own behalf for a

---

[55] Opposition 9:7-14.

wrong done by a third person to the corporation. In any event, Pepperidge Farm's rationale for why Sherman is not a third-party beneficiary does not hinge on *Jara*.

Because Sherman cannot meet the first *Goonewardene* factor, the Court concludes as a matter of law that Sherman is not a third-party beneficiary to the Consignment Agreement. *See Goonewardene*, 6 Cal. 5th at 830 (requiring all three *Goonewardene* factors to be satisfied before a third-party action may proceed). Accordingly, Sherman has not alleged sufficient facts to support his three contract claims. Pepperidge Farm's Motion is **GRANTED** with respect to Sherman's second, third, and fourth claims for relief.

The Court makes this ruling without leave to amend because, given the history of Sherman's previous amendments and his failure to rectify the deficiencies of his pleading, any future amendment would be futile. *Cf. Foman v. Davis*, 371 U.S. 178, 182 (1962) (leave to amend may be denied when the amendment would be futile).

**C.      First Claim for Relief: Retaliation in Violation of California Law**

In his first claim for relief, Sherman alleges that Pepperidge Farm retaliated against him for engaging in protected speech in violation of Cal. Labor Code § 1102.5.[56]

To plead a *prima facie* case of "whistleblower" retaliation under that statute, Sherman must allege facts that, if true, satisfy the following elements: (1) Pepperidge Farm was Sherman's employer; (2) Sherman engaged in protected activity; (3) Sherman experienced an adverse employment action; and (4) a causal link exists between the protected activity and adverse action. *See* Judicial Council of California Civil Jury Instruction 4603; *Moreno v. UtiliQuest, LLC*, 29 F.4th 567, 575 (9th Cir. 2022) (citing *St. Myers v. Dignity Health*, 44 Cal. App. 5th 301, 314 (2019)).

In its Motion, Pepperidge Farm argues that Sherman's whistleblower retaliation claim fails for two reasons: (1) the new allegations in the Third Amended Complaint still fail to allege that Sherman engaged in any activity protected under Cal. Labor Code §1102.5;[57] and (2) the new allegations regarding the timing of Sherman's objections still do not demonstrate a causal connection between the alleged protected activity and the termination of the Consignment Agreement.[58] The Court addresses each argument below.

---

[56]    Third Amended Complaint ¶¶ 56-71.
[57]    Motion 18:1-19:22.
[58]    *Id.* at 19:23-22:16.

1.  **Protected Activity**

A plaintiff engages in protected activity under California law when the employee makes a report and has reasonable cause to believe that the report discloses a "violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation." Cal. Lab. Code § 1102.5(b). "Under the statute, the relevant inquiry is not whether the conduct actually violated any specific statute or regulation, but whether the plaintiff reasonably believed that there was a violation of a statute, rule, or regulation at the time it was reported." *Killgore v. SpecPro Pro. Servs., LLC*, 51 F.4th 973, 988 (9th Cir. 2022) (citing *Nejadian v. Cnty. of L.A.*, 40 Cal. App. 5th 703 (2019) (quotations omitted)).

In its earlier ruling regarding Sherman's Second Amended Complaint, the Court concluded that Sherman's objection to the settlement agreement did not meet the standard for protected activity under Cal. Labor Code § 1102.5(b). Relying on persuasive authority from this circuit to interpret the statute at bar, the Court concluded that Sherman failed to identify any statute, rule, or regulation that he reasonably believed Pepperidge Farm to have violated.[59] The Court also addressed Sherman's allegation in the Second Amended Complaint that "breaching a contract is a violation of California common law as well as Federal law" and that Sherman "had reasonable cause to believe that the information he disclosed evidenced a violation of applicable laws and [Pepperidge Farm's] policies."[60] The Court found these allegations to be insufficient, since a breach of contract is not a violation of a statute, rule, or regulation.[61]

With respect to the Third Amended Complaint, Sherman still fails to allege that he engaged in protected activity. Although Sherman adds the allegation that a "[b]reach of contract is a violation of California common law,"[62] the Court affirms its previous holding: a breach of contract, regardless of whether Sherman now characterizes that contract breach as a violation of California common law, is not a violation of a statute, rule, or regulation.[63] *See Tandon v. GN Audio USA, Inc.*, 2021 WL 242916, at *15 (N.D. Cal. Jan. 25, 2021), *aff'd*, 2022 WL 1210945 (9th Cir. Apr. 25, 2022) ("A breach of contract is not a violation of a statute, rule, or regulation and cannot give rise to a Section 1102.5 claim."); *Ross v. County of Riverside*, 36 Cal. App. 5th 580, 592 (2019) (the employee "must be able to point to some legal foundation for his suspicion—some

---

| | |
|---|---|
| 59 | Order 13:18-14:9. |
| 60 | Second Amended Complaint ¶¶ 39-40; Order 14:10-14. |
| 61 | Order 14:10-15:3. |
| 62 | Third Amended Complaint ¶ 31. |
| 63 | Order 14:16-17. |

statute, rule or regulation [that] may have been violated by the [relevant] conduct"). Sherman does not cite any facts that would show that his suspicion of illegal activity was based upon a statute, rule, or regulation.

Sherman tries to revive his claim by invoking *Mize-Kurzman v. Marin Cmty. Coll. Dist.*, 202 Cal. App. 4th 832 (2012), for the principle that a speaker's subjective belief that she engaged in protected activity must be interpreted liberally. However, *Mize-Kurzman* is distinguishable from the present case. In *Mize-Kurzman*, a former community college dean "belie[ved] that [an HR employee's] conduct violated the Education Code," *id.* at 865; *i.e.*, a specific statute.[64] Therefore, the triable issue in *Mize-Kurzman* was whether the dean's belief that she had disclosed a violation of the California Education Code—a statute—was in fact reasonable. But this case is not like *Mize-Kurzman*; here, Sherman does not identify a statute, rule, or regulation that may have been violated by the disclosed conduct. Sherman's pleading with respect to Cal. Labor Code § 1102.5 is therefore insufficient.

### 2. Causation

A plaintiff can demonstrate a causal link by showing that the retaliation was a substantial or motivating factor for the defendants' adverse employment actions. *See Avila v. Los Angeles Police Dep't*, 758 F.3d 1096, 1101 (9th Cir. 2014) (citing *Knickerbocker v. City of Stockton*, 81 F.3d 907, 911 (9th Cir. 1996) (requiring retaliation to be a "substantial factor" in adverse employment action)); *see also Bd. of County Comm'rs, Wabaunsee County, Kan. v. Umbehr*, 518 U.S. 668, 675, (1996); *accord Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). Direct and circumstantial evidence may be used to show that the protected activity was a substantial factor in the adverse action. *See Coszalter v. City of Salem*, 320 F.3d 968, 977 (9th Cir. 2003) (finding that the plaintiff may satisfy the "substantial factor" standard in numerous ways, either by timing or through statements by the employer showing its disapproval of the protected activity or by showing that the employer's proffered reasons for the adverse action were pretextual).

With respect to Sherman's Second Amended Complaint, the Court previously held that Sherman failed plausibly to allege a causal connection between his alleged protected activity and the termination of the Consignment Agreement for two reasons. First, the Court found that undisputed facts, subject to judicial notice, directly contradicted Shermans' conclusory allegation that his purported protected complaints occurred before Pepperidge Farm notified Sherman about the investigation into his

---

[64] Reply 7:25-8:1.

conduct.[65] Second, the Court concluded that a "two-year gap between Sherman's first alleged protected activity (filing the notice of intent to object in July 2019) and the alleged adverse action (which occurred in June 2021)" was "too great, as a matter of law, to raise a plausible inference of retaliation."[66]

In his Third Amended Complaint, Sherman adds a series of new allegations in an attempt to establish that his purported protected activity and the contract were temporally proximate.[67] To establish that timeline, Sherman adds the allegation that, throughout the first part of 2021, he opposed a revised version of a settlement agreement that Pepperidge Farm had prepared.[68] Sherman also alleges that he made many of his complaints of the alleged breach of contract on public internet forums that could be accessed by anyone[69] and that, upon information and belief, individuals involved in the decision to terminate Fun Stuff's contract with Pepperidge Farm were aware of Sherman's complaints of a breach of contract.[70] Sherman also now alleges that he made his objections to a revised settlement agreement in May and June of 2021.[71] Finally, Sherman alleges that, on or around July 10, 2021, he filed a Notice of Intent to File Objection to a proposed settlement agreement that Pepperidge Farm had drafted.[72] Taking the allegations in the Second Amended Complaint as true, the Court concludes none of Sherman's newly alleged facts cures the temporal defect that the Court previously detected.

First, as Sherman now alleges in the Third Amended Complaint, he opposed a revised version of a settlement agreement that Pepperidge Farm had prepared throughout the first part of 2021.[73] The alleged adverse employment action occurred on June 3, 2021, which is when Pepperidge notified Sherman of the investigation into his conduct.[74] The Court previously held that a two-year gap between a protected activity and an adverse action was too great to raise a plausible inference of retaliation.[75] The Court also

---

[65]    Order 17:17-18:13.

[66]    Order 16:20-24 & 18:19-22.

[67]    Third Amended Complaint ¶¶ 25, 34, & 41-44; *see also* Opposition 14:11-15:9.

[68]    Third Amended Complaint ¶ 25.

[69]    *Id.* at ¶ 29.

[70]    *Id.* at ¶ 30.

[71]    *Id.* at ¶ 34.

[72]    *Id.* at ¶ 42.

[73]    *Id.* at ¶ 25.

[74]    *Id.* at ¶ 37.

[75]    Order 18:14-22.

concludes that a three-month gap between Sherman's protected activity and the adverse action is, by itself, insufficient evidence of causality. *See Fazeli v. Bank of Am., NA*, 525 F. App'x 570, 571 (9th Cir. 2013) (finding that fewer than three months was insufficient to infer causation in light of other evidence that no causal link existed).

Second, Sherman now alleges that he made his objections to a revised settlement agreement in May and June of 2021.[76] However, the Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint" or "documents that are proper subjects of judicial notice." *See Laws. Funding Grp., LLC v. Dale Alan Harris, Esq.*, 2015 WL 13298145, at *5 (C.D. Cal. Sept. 18, 2015); *see also Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013). In the Court's prior Order, the Court took judicial notice of the fact that Sherman did not file that objection until June 7, 2021, which was four days after the alleged adverse action began on June 3, 2021.[77] Having taken judicial notice of the date of Sherman's objection, the Court is not required to accept Sherman's new (and contradictory) allegation as true.

Third, Sherman argues in his Opposition that the adverse action was not notifying Sherman that he was under investigation, but, rather, the adverse action was terminating Sherman "and that decision surely had not been taken as of July 7, and as plead did not take place until July 21[, 2021]."[78] Essentially, by altering the date of the adverse action, Sherman attempts to manufacture causality by showing that he engaged in protected activity just days before those adverse actions. However, "[e]mployers need not suspend previously planned [action] upon discovering that a [protected activity occurred], and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001). In short, Sherman "cannot establish a causal connection based on temporal proximity if his protected activity occurred after an adverse employment action had been considered or an investigation had been opened into an employment violation." *Dalton v. State of Fla., Dep't of Highway Safety & Motor Vehicles*, 2012 WL 5306313, at *5 (S.D. Fla. Oct. 26, 2012). In short, in view of the foregoing, the Court concludes that Sherman has failed to plead facts that establish a causal connection between his allegedly protected complaints and his termination.

Sherman fails to show (1) that he engaged in protected activity and (2) a causal link exists between the protected activity and adverse action. The Motion to dismiss the first

---

[76]   Third Amended Complaint ¶ 34.

[77]   Order 17:18-20.

[78]   Opposition 15:3-5.

claim is **GRANTED** for those two independent reasons.  Because amending this claim would be futile for the reasons discussed in Part III.B., *supra*, leave to amend is **DENIED**.

## IV.  DISPOSITION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1. Pepperidge Farm's instant Motion to dismiss is **GRANTED**.
2. Sherman's Third Amended Complaint is **DISMISSED without leave to amend**.
3. Judgment shall issue accordingly.

**IT IS SO ORDERED.**

Dated:  November 17, 2023

John W. Holcomb
UNITED STATES DISTRICT JUDGE